In re FRITZSCH CUSTOM
BUILDERS, LLC,
Debtor.

No. 09–10083.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 22, 2010.

John A. Schuh, Cincinnati, OH, for Debtor.

## ORDER PARTIALLY GRANTING MOTION TO APPROVE COMPROMISE

JEFFREY P. HOPKINS, Bankruptcy Judge.

We are asked in this proceeding to approve a motion to compromise ("Motion") (Doc. 75) reached in a lawsuit filed by the chapter 7 trustee against Westfield Insurance Company ("Westfield") to recover monetary damages based on Westfield's obligation under an insurance policy to fund the Debtor's attorney's fees incurred in certain kinds of litigation, pursuant to Fed. R. Bankr.P. 9019(a). The chapter 7 trustee and the Debtor filed the Motion. Thomas Nies, an unsecured creditor, filed

an objection (Doc. 76). Following a hearing, the parties submitted post-hearing briefs.

Mr. Nies and his wife obtained a prepetition judgment against the Debtor for encroachment of a view easement.[1] The Debtor held a commercial insurance policy with Westfield. The Debtor sought coverage under the policy.

Westfield denied the claim. During the pendency of the chapter 11 case[2] the Debtor obtained an order approving the appointment of special counsel, Gary F. Franke, to pursue recovery under the Westfield policy. See Docs. 27 & 53. Thereafter, Mr. Franke commenced a state court lawsuit against Westfield.

Westfield has now offered to settle a portion of the claims prosecuted by Mr. Franke. Specifically, Westfield has offered $75,000 to compromise the Debtor's claim that Westfield is liable for the Debtor's attorney's fees in the Nies litigation.[3] The Motion proposes to distribute $25,000 to Mr. Franke and the $50,000 balance to C. Francis Barrett, the Debtor's attorney in the Nies litigation. The Motion proposes that the $50,000 payment to Mr. Barrett "be applied to his prepetition claim for attorney's fees."[4] Motion at 3.

Mr. Nies does not challenge the amount of the settlement or the $25,000 payment to Mr. Franke. Mr. Nies believes that the settlement constitutes property of the estate and therefore the $50,000 balance re-

---

1. Further details of the litigation are outlined in this Court's June 12, 2009 Memorandum of Decision on Order Converting Case. See Doc. 56.

2. The Debtor filed a chapter 11 petition. The Court converted the case to chapter 7. See Doc. 57.

3. The Debtor asserts other claims against Westfield that are not the subject of the Motion.

4. The chapter 11 Debtor also obtained an order retaining Mr. Barrett as special counsel to appeal a portion of the Nies judgment. See Docs. 12 & 52. The Motion does not propose that any part of the $50,000 be applied to Mr. Barrett's postpetition services related to the appeal.

maining after payment of Mr. Franke's administrative claim must be distributed in accordance with 11 U.S.C. § 726. According to Mr. Nies, the direct payment of $50,000 on Mr. Barrett's general, unsecured, prepetition claim violates § 726. The trustee, the Debtor, and Mr. Barrett (collectively, the "Proponents") contend that direct payment toward Mr. Barrett's prepetition claim is dictated by the relationship between Westfield and Mr. Barrett.

### FACTS

The Westfield insurance policy provides: "[Westfield] will have the ... duty to defend the insured against any 'suit' seeking [property] damages." Mr. Barrett is not named as an "insured" under the policy.

In the early stages of the dispute between the Debtor and the Nieses, the Debtor retained Mr. Barrett as legal counsel. Thereafter, Westfield hired Markesbery & Richardson as co-counsel for the Debtor.[5] At some point during the Nies litigation, Westfield orally informed Mr. Barrett that Westfield would cover at least some of Mr. Barrett's fees. As the litigation unfolded, Westfield concluded that the policy did not cover the damages claimed by the Nieses, denied coverage and cancelled the contract with Markesbery & Richardson to defend the Debtor. Judgment was entered against the Debtor.

The Debtor filed its chapter 11 petition. Mr. Barrett filed a general, unsecured claim for prepetition attorney's fees of $146,313.60. Before agreeing to the $75,000 proposed compromise, Westfield scrutinized Mr. Barrett's billing records and reached an agreement with Mr. Barrett on an amount that Westfield would pay. Westfield tendered a check to Mr. Barrett, made payable solely to Mr. Barrett. After consulting with the Debtor's bankruptcy counsel and Mr. Franke, Mr. Barrett sent the check back to Westfield. Westfield later sent a letter to Mr. Franke, offering $75,000 to settle "the claims made by [the Debtor] ... for attorney fees allegedly owed by [the Debtor] to Fran Barrett."

### ISSUE

The Motion seeks to compromise the Debtor's cause of action against Westfield for attorney's fees. Therefore, the issue is whether the cause of action, particularly its proceeds, is estate property under 11 U.S.C. § 541 or property of Mr. Barrett.

### LAW & ANALYSIS

#### I. Causes of Action and Estate Property

The rule is well-established that causes of action are estate property if a debtor could have asserted the action at the commencement of the bankruptcy case. *In re Cannon*, 277 F.3d 838, 853–54 (6th Cir.2002). No one disputes that the claim against Westfield accrued prepetition. The salient question before this Court, however, concerns whether the contractual claim for attorney's fees belonged to the Debtor or to Mr. Barrett. This issue is governed by state law. *Id.* at 853.

#### II. Ohio Law

"Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991). The Debtor is a party to the insurance contract. Mr. Barrett is not. Therefore, the cause of action belonged to the Debtor exclusively unless Mr. Barrett is a third-party beneficiary of the insurance policy.

---

**5.** On Schedule B, the Debtor states: "Although the insurer hired and paid an attorney to enter an appearance in the case, the actual defense was made by C. Fran Barrett."

■ In Ohio, a third-party is not a third-party beneficiary unless the parties to the contract intended to benefit the third-party. *Trinova Corp. v. Pilkington Brothers, P.L.C.,* 70 Ohio St.3d 271, 277, 638 N.E.2d 572 (1994). Specifically, "there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party[.]" *Id.* at 278, 638 N.E.2d 572.

■ The Proponents failed to present any evidence that the Debtor contracted with Westfield with the intent to benefit Mr. Barrett, the attorney providing the defense. The Debtor's principal did not testify at the evidentiary hearing on the Motion. Nor does the record reflect that the Debtor even knew Mr. Barrett when it purchased the policy.[6] Consequently, there is no evidence that the Debtor entered into the contract with the intent to benefit Mr. Barrett. The policy merely conferred an incidental benefit upon Mr. Barrett. As such, Ohio law does not give Mr. Barrett the right to sue Westfield under the Debtor's insurance contract.

Although this Court is not aware of an Ohio decision analyzing whether an attorney is a third-party beneficiary of an insurance contract, the Court's conclusion is consistent with decisions from other jurisdictions finding that an attorney cannot sue an insurer for breach of the insurer's agreement to defend the insured. *See Continental Casualty Co. v. Marx,* 480 So.2d 177, 178–79 (Fla.Dist.Ct.App.1985) ("[A]ttorney is not a third party beneficiary ... No court has ever held-indeed the proposition seems never before even to have been advanced-that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal

fees. We shall not be the first."); *see also Yale L. Galanter, P.A. v. Johnson,* 293 Fed.Appx. 750 (11th Cir.2008); *Old Republic Ins. Co. v. Sidley & Austin,* 702 F.Supp. 207, 211 (N.D.Ill.1988) (law firm not a third-party beneficiary of contract between insurer and insured). If confronted with the issue, this Court believes that the Ohio Supreme Court would—like *Continental Casualty*—"not be the first" to recognize such a novel theory of recovery.

Because Mr. Barrett has no rights against Westfield under the Debtor's insurance policy, the Debtor's cause of action under the contract is "the exclusive property of the bankruptcy estate and cannot be asserted by a creditor." *See Cannon,* 277 F.3d at 854.

### III. Sixth Circuit's Interpretation of Ohio Law

The Sixth Circuit addressed virtually the same issue in *In re Hronek,* 563 F.2d 296 (6th Cir.1977). Prepetition, the debtor was sued for damages arising from an automobile accident. Attorney Samuel Asad defended the debtor until the debtor's insurer assumed the defense. After the parties reached a settlement, the debtor filed a bankruptcy petition. The bankruptcy trustee filed an adversary complaint to recover amounts due to the debtor based upon the insurer's initial failure to defend. The insurer offered to settle the trustee's claim for $2,500. Mr. Asad moved to dismiss the complaint, contending that the funds belonged to him. The bankruptcy court ruled against Mr. Asad. The Sixth Circuit affirmed, concluding that the $2,500 constituted estate property.

---

**6.** The record reveals that the Westfield policy was in effect as early as February of 2005,

before any dispute between the Debtor and the Nieses arose.

The Sixth Circuit reasoned that the contractual claim of the debtor became the contractual claim of the estate upon the filing of the petition. Like this Court, the Sixth Circuit was not aware of any Ohio decisions giving an attorney the right to bring an action for breach of the insurer's duty to defend. *Id.* at 299. The Appeals Court then cited several Ohio Supreme Court decisions wherein the insured, not the insured's attorney, maintained the cause of action. *Id.* (citing *Motorists Mut. Ins. Co. v. Trainor,* 33 Ohio St.2d 41, 294 N.E.2d 874 (1973); *Socony–Vacuum Oil Co. v. Continental Casualty Co.,* 144 Ohio St. 382, 59 N.E.2d 199 (1945); *Bloom–Rosenblum–Kline Co. v. Union Indemnity Co.,* 121 Ohio St. 220, 167 N.E. 884 (1929)).[7] Consequently, the Sixth Circuit concluded that "Ohio decisions in this area recognize the right as one which belongs to the insured." *Hronek,* 563 F.2d at 299.

## IV.  Proponents' Arguments

### A.  Independent Agreement

The Proponents highlight the fact that Mr. Barrett had a separate agreement with Westfield. This does not change the analysis. A separate agreement does not make Mr. Barrett a third party beneficiary of the Debtor's contract with Westfield. *See Yale L. Galanter, P.A.,* 293 Fed.Appx. 750 (11th Cir.2008) (notwithstanding a separate agreement between the attorney and the insurer, attorney cannot recover fees directly from insurer *based upon insurance policy to which he was not a party).* Consequently, a separate agreement does not alter the result reached here that the Debtor is the exclusive owner of the cause of action arising under the insurance policy that the estate seeks to compromise.[8] *See* Fed. R. Bankr.P. 9019(a).

It is important to note that Mr. Barrett may possess a separate right to payment from Westfield. *See Yale L. Galanter, P.A.,* 293 Fed.Appx. 750 (11th Cir.2008) (although attorney cannot recover fees under insurance policy, he may be able to recover the fees pursuant to the terms of a separate agreement between the attorney and the insurer). It is equally important to note, from the oral arguments and the briefs, that Westfield seeks to avoid having to pay both Mr. Barrett and the estate for Mr. Barrett's defense of the Debtor in the Nies litigation. But none of these issues are before the Court.

The sole issue this Court must decide concerns whether *the Debtor's* cause of action, the estate's suit against Westfield to defend, can be compromised for $75,000. *See Reynolds v. Commissioner,* 861 F.2d 469, 473 (6th Cir.1988). The Motion is before the Court because: (1) the Court appointed Mr. Franke to prosecute *the Debtor's* cause of action against Westfield; (2) Mr. Franke commenced an action against Westfield on behalf of *the Debtor;* (3) Westfield has offered to pay $75,000 to compromise *the Debtor's* claim for attorney's fees; and (4) the Trustee seeks Court approval to compromise *the Debtor's* claim.

In deciding the motion to approve the proposed compromise, this Court need not reach the merits of any separate agreement between Mr. Barrett and Westfield.

---

**7.** Interestingly, in an Ohio Supreme Court decision rendered subsequent to *Hronek,* a bankruptcy trustee was permitted to maintain an action for breach of duty to defend where the debtor was the insured. See *Roberts v. United States Fidelity & Guaranty Co.,* 75 Ohio St.3d 630, 665 N.E.2d 664 (1996).

**8.** Mr. Barrett even concedes that the claim for failure to defend "belongs to the debtor, and it passed to the Trustee." See Doc. 85 at 3.

The decision on that matter does not change the fact that the Debtor, and by operation of law the estate, is the exclusive owner of the duty to defend cause of action being compromised in bankruptcy court. The decision on the merits of the separate agreement is irrelevant to the Court's inquiry under Rule 9019(a).[9]

### B. Insurance Proceeds

The Proponents also note the distinction between a debtor's interest in an insurance contract and a debtor's interest in the insurance proceeds. They cite two decisions finding that the former is estate property while the latter may not be. *See In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993); *In re Doug Baity Trucking, Inc.*, No. 04–13537, 2005 WL 1288018 (Bankr. M.D.N.C. Apr. 21, 2005). Pursuant to these decisions, the Proponents believe that the $75,000 offered by Westfield constitutes insurance proceeds that are not estate property.

The Court agrees that insurance proceeds may not be estate property. However, the $75,000 offered by Westfield does not represent insurance proceeds. Instead, it represents the proceeds of the Debtor's cause of action for breach of duty to defend. This is distinguishable from any duty to pay insurance proceeds that Westfield may have.[10]

Both *Edgeworth* and *Doug Baity Trucking* distinguish insurance proceeds from a debtor's contractual rights against the insurer. Both decisions state that the latter is estate property. *See Edgeworth*, 993 F.2d at 55 ("[a]ny rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate"); *see also Doug Baity Trucking*, 2005 WL 1288018, at *4 (quoting *Edgeworth*). *Edgeworth* cites *In re Soliz*, 77 B.R. 93 (Bankr.N.D.Tex.1987) as an example of a contractual right of an insured that is distinguishable from the policy proceeds. *Edgeworth*, 993 F.2d at 55 n. 15. *Soliz* holds that a compromise of a debtor's claim for breach of duty to defend is property of the estate because the duty to defend is a contract right of the debtor. *See Soliz*, 77 B.R. at 97 ("[T]he cause of action settled by the Trustee was a cause of action which belonged to the Bankrupt exclusively *since it was a dispute as to an alleged contract right between the Bankrupt and the insurance company*.") (emphasis added). The *Soliz* holding is predicated, in large part, on the Sixth Circuit's *Hronek* decision discussed above. *See Soliz*, 77 B.R. at 97 ("*Hronek* clearly holds that a cause of action for failure to defend ... passes to the Trustee on the date of the filing.").

Therefore, even *Edgeworth* and *Doug Baity Trucking* dictate that the Debtor's cause of action against Westfield is estate property. *See also Doug Baity Trucking*, 2005 WL 1288018, at *8 ("The only right

**9.** Some of the confusion in this case over ownership of the $75,000 settlement fund obviously relates to the apparent use of Mr. Barrett's billing records and the negotiations that took place between the insurer and him by the trustee in measuring the amount of attorney's fees which Westfield ultimately agreed to pay the Debtor in order to compromise in the state court litigation.

**10.** Westfield's duty to pay and duty to defend arise from the same paragraph of the policy, which states:

[Westfield] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Westfield] will have the right and duty to defend the insured against any "suit" seeking those damages.

The duty to pay proceeds arises under the first sentence. The duty to defend arises under the second sentence.

that accrues to the estate under Section 541 of the Bankruptcy Code is the right to have [the insurer] protect the Debtor's existing assets from the consequences of the Debtor's allegedly tortious conduct to the extent of the available insurance proceeds under the Policy. Importantly, *this right arises under the terms of the Policy: it is not a right to the proceeds of the Policy.*") (emphasis added).

## V. Proceeds From Cause of Action

 Instead of being insurance proceeds, the $75,000 offered by Westfield represents proceeds of the Debtor's settlement of the adversary proceeding brought by the trustee to recover on a contractual cause of action. Because the cause of action is property of the estate and not Mr. Barrett, the proceeds from the action are also property of the estate. *See* 11 U.S.C. § 541(a)(6); *see also In re Burgess,* 438 F.3d 493, 499 (5th Cir.2006) (where cause of action is estate property, a postpetition recovery on the same becomes estate property under § 541(a)(6)).

## VI. Conclusion

The Debtor's cause of action is property of the estate. It follows that the $75,000 proceeds representing the offer to settle the cause of action are also property of the estate. Therefore, the Motion is **GRANTED** to the extent that it seeks to compromise the Debtor's claim for $75,000. However, the Motion is **DENIED** to the extent that it seeks to apply the $50,000 balance,

after payment of Mr. Franke's administrative claim, towards Mr. Barrett's prepetition claim.[11]

---

11. The funds offered by Westfield in settlement are proceeds of Debtor's suit to enforce contract rights under an insurance policy and thus are property of the estate to be distributed by the trustee to creditors in accordance with § 726. Under *Hronek,* it would appear that Mr. Barrett, at best, has a claim as a general unsecured creditor of the estate but no direct claim to the funds in their entirety. Nothing, however, would prevent Mr. Barrett from asserting in a court of competent juris-

diction a cause of action against the insurer for any shortfall to the amount received from the estate for the alleged breach of a separate agreement or promise to pay him upon which he reasonably relied in representing the Debtor in the Nies's litigation. See *Olympic Holding Company, LLC v. ACE Limited,* 122 Ohio St.3d 89, 97, 909 N.E.2d 93 (2009). ("Thus, promissory estoppel is an adequate remedy for a fraudulent oral promise or breach of an oral promise, absent a signed agreement.").